IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

MAVERICK KEMP GRAY,
*Appellant.*

No. 2 CA-CR 2014-0436
Filed August 13, 2015

---

Appeal from the Superior Court in Pima County
No. CR20132758001
The Honorable Scott Rash, Judge

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Chris DeRose, Assistant Solicitor General, Phoenix
*Counsel for Appellee*

Steven R. Sonenberg, Interim Pima County Public Defender
By David J. Euchner, Assistant Public Defender, Tucson
*Counsel for Appellant*

## OPINION

Presiding Judge Miller authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Espinosa concurred.

M I L L E R, Presiding Judge:

¶1        Maverick Gray was convicted after a jury trial of one count of sale of narcotics, cocaine base, and sentenced to a 9.25-year prison term.   On appeal, he argues the trial court abused its discretion by refusing his request for a jury instruction on entrapment.   For the reasons that follow, Gray's conviction and sentence are affirmed.

### Factual and Procedural Background

¶2        We view the facts in the light most favorable to the party requesting the jury instruction. *See State v. King*, 225 Ariz. 87, ¶ 13, 235 P.3d 240, 243 (2010).   In June 2013, Tucson Police Department Officer J.D. was working undercover, posing as a narcotics buyer.   Around 11:30 p.m., he saw Gray seated at a bus stop although, the officer believed, bus service had ended for the evening.   He pulled his car to the curb, ten to fifteen feet in front of the bus stop, and exchanged looks with Gray.   J.D. then asked Gray, "Hey, can you help me out?"   Gray approached the car and responded, "What kind of help do you need?"   J.D. replied that he was trying to get some "hard," a slang term used for crack cocaine.   Gray asked what was in it for him.   Gray then negotiated a ten-dollar fee in exchange for acquiring twenty dollars of crack cocaine.

¶3        Gray got in J.D.'s vehicle and directed him four miles through the city to an apartment complex.   When they arrived J.D. gave Gray a twenty-dollar bill.   Gray left the vehicle and headed to an unknown location.   He returned about ten minutes later with a crack rock.   J.D. gave Gray ten dollars and communicated to other officers that the deal had been completed.   Gray was arrested shortly thereafter.

¶4        Over Gray's objection, the trial court admitted a recording of his conversation with J.D.  Based on the statements he made to the officer, Gray requested an instruction on entrapment arguing he admitted the elements of the crime in the recording.  The court denied the request, concluding Gray had not admitted to the substantive elements of the underlying offense; therefore, the admission requirement for an entrapment defense had not been met.  Gray was convicted and sentenced as described above.  This appeal followed.

**Discussion**

¶5        Gray argues the jury instruction for entrapment was warranted because he had fulfilled the admission requirement under Arizona's statutory entrapment defense either by simply not challenging the state's evidence or through Gray's statements to J.D. during the sale.  We review a trial court's denial of a requested instruction for an abuse of discretion.  *State v. Musgrove*, 223 Ariz. 164, ¶ 5, 221 P.3d 43, 46 (App. 2009).  We will not reverse the court's ruling absent a clear abuse of that discretion and prejudice to the defendant.  *State v. Garfield*, 208 Ariz. 275, ¶ 11, 92 P.3d 905, 908 (App. 2004).  "An abuse of discretion includes an error of law." *State v. Rubiano*, 214 Ariz. 184, ¶ 5, 150 P.3d 271, 272 (App. 2007).  Such error includes statutory interpretation, which we review de novo. *State v. Villegas*, 227 Ariz. 344, ¶ 2, 258 P.3d 162, 163 (App. 2011).

¶6        The elements of an entrapment defense are codified in A.R.S. § 13-206, which provides in relevant part that a defendant must "admit by [his] testimony or other evidence the substantial elements of the offense charged."  "Entrapment is a question for the jury unless there is no evidence to support the defense . . . ." *State v. Gessler*, 142 Ariz. 379, 382, 690 P.2d 98, 101 (App. 1984).

¶7        We first address Gray's argument that his decision to not "challenge" the state's evidence during trial was sufficient to justify an entrapment instruction.  Gray's silence at trial is not an admission to all elements of the offense.  Our supreme court has held that an admission "must be made in some affirmative manner and cannot be assumed from a defendant's silence." *State v. Nilsen*, 134 Ariz. 431, 432, 657 P.2d 419, 420 (1983).  *Nilsen*'s holding was

recently addressed, albeit in dicta, in *State v. Williamson*, 236 Ariz. 550, ¶¶ 50-51, 343 P.3d 1, 15 (App. 2015) (trial court did not abuse discretion in requiring defendant to admit elements of offenses by stipulation in order to assert entrapment defense). Without reference to *Williamson*, Gray argues *Nilsen* is no longer controlling because it predates changes directed by the legislature when it codified the common law entrapment defense. Although *Williamson* arguably controls resolution of Gray's contention against him, we examine the merits of his argument, which were not presented in *Williamson*.

**¶8** Gray's argument impliedly contends the statute's authorization of admission by "other evidence" vitiates *Nilsen* because the defense is no longer limited to a formal admission. But the common law rule was not as narrow as Gray implies. It required that a defendant "must admit the substantial elements of the crime and one who denies knowledge of the crime may not raise the defense of entrapment." *State v. McKinney*, 108 Ariz. 436, 439, 501 P.2d 378, 381 (1972). *Nilsen* outlined several methods by which a defendant could satisfy the admission requirement, including testifying, stipulating, or having an admission read into evidence. 134 Ariz. at 432, 657 P.2d at 420. Stipulating or having the admission read into evidence, as suggested by *Nilsen*, would constitute "other evidence" under the statute. *Williamson*, 236 Ariz. 550, ¶¶ 50-51, 343 P.3d at 15. Moreover, nothing in § 13-206(A) suggests that a defendant's silence against the state's evidence constitutes "other evidence." Therefore, given the recent holding in *Williamson* and the similarity of the codified statute to the prior common law rule, we conclude *Nilsen* is still controlling law, and a defendant is required to affirmatively admit the elements of the offense.

**¶9** We also note the facts of *Nilsen* are analogous to this case. Unlike Gray, Nilsen did attempt to stipulate his admission, but the state refused the proffered stipulation. 134 Ariz. at 432, 657 P.2d at 420. However, like Gray, once Nilsen's attempt at admission had failed, he "sat mute and made no active admission of the elements of the offense." *Id.* Here, after defense counsel had failed to convince the trial court that statements from the audio recording constituted

an admission under the statute, Gray did not avail himself of *Nilsen*'s alternatives to testimony.

¶10 Gray also argues the statements from the audio recording and its transcript constitute "other evidence" as required by the entrapment defense statute. Gray asserts § 13-206(A) "allows for admission-by-implication," relying again on the argument that the statute confers some new benefit upon the defendant. On the contrary, *Williamson* and *Nilsen* suggest the admission must be more than implied from the existing evidence; rather, it must be affirmatively admitted.

¶11 But even if the statements from the audio recording could constitute "other evidence," Gray's actual statements there do not amount to an admission of the substantive elements of the offense. § 13-206(A). Gray highlights statements in the recording where he said to J.D., "I'm a good person," and "I don't usually do this." No facts support the contention that when Gray said "I don't usually do this," while riding in the undercover officer's vehicle on way to the buy and directly after the buy, he meant "this" to constitute the elements of the crime for which he had been charged—unlawful sale of narcotics under A.R.S. § 13-3408(A)(7).[1] Moreover, an admission must be complete because "[r]equiring a trial court to entertain an entrapment defense when the defendant has not admitted all elements of the crime does not serve the cause of criminal justice." *State v. Soule*, 168 Ariz. 134, 137, 811 P.2d 1071, 1074 (1991). None of Gray's statements suggests a complete admission.

¶12 Finally, the purpose behind the Arizona rule requiring an explicit admission is to avoid jury confusion through inconsistent defenses. *Soule*, 168 Ariz. at 137, 811 P.2d at 1074. Here, a number of factors could contribute to jury confusion about the defense's

---

[1]Nor did Gray know he was speaking to an officer or being recorded at the time. Arguably, if a defendant were to admit as evidence a prior confession of the crime to an officer during a formal interrogation, such a confession might meet the requirements of the statute, but that is not the case before us.

posture.   First, Gray, to the extent his statement that he does not "usually do this" could be interpreted as an admission, refused to admit the charged offense at trial.   Next, defense counsel cross-examined officer J.D. on Gray's intoxication, which could only create doubts about the validity of an admission because intoxication is not a defense to a criminal offense.  A.R.S § 13-503.  The tentative nature of the admission and the testimony elicited during cross-examination could likely produce the inconsistent defense our supreme court sought to avoid in requiring an affirmative admission to the underlying offense for an entrapment defense.  We conclude the trial court did not abuse its discretion by denying a jury instruction on the entrapment defense.

**Disposition**

¶13        For the reasons stated above, Gray's conviction and sentence are affirmed.